No. 54,815
and
No. 54,816
(Consolidated)

MERL EDWARD JOHNSTON, *Claimant-Appellee,* and DONNA PRUYN, *Claimant-Appellee,* v. TONY'S PIZZA SERVICE, d/b/a SCHWAN'S SALES OF MARSHALL, INC., *Respondent-Appellee,* and LIBERTY MUTUAL INSURANCE COMPANY, *Insurance Carrier-Appellee,* and KANSAS WORKMEN'S COMPENSATION FUND, *Appellant.*

(658 P.2d 1047)

Opinion filed February 19, 1983.

*John M. Ostrowski,* of McCullough, Wareheim & LaBunker, of Topeka, argued the cause and was on the brief for claimant-appellees.

*C. Stanley Nelson,* of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause and was on the brief for appellant.

*Aubrey G. Linville,* of Clark, Mize & Linville, Chartered, of Salina, was on the brief for respondent-appellee and insurance carrier-appellee.

The opinion of the court was delivered by

McFARLAND, J.: The sole issue in these consolidated workers' compensation appeals is whether the reimbursement provision of K.S.A. 1982 Supp. 44-556(*d*) applies when the balance due the claimant after judicial reduction of the award exceeds the amount of the overpayment.

K.S.A. 1982 Supp. 44-556(*d*) provides:

"(*d*) If compensation has been paid to the worker by the employer or the employer's insurance carrier during the pendency of an appeal to the district court or to the appellate courts and the amount of compensation awarded by the director or the district court is reduced or totally disallowed by the decision on the appeal, the employer and the employer's insurance carrier, except as otherwise provided in this section, shall be reimbursed from the workers' compensation fund established in K.S.A. 44-566a and amendments thereto for all amounts of compensation so paid which are in excess of the amount of compensation that the worker is entitled to as determined by the final decision on appeal. The

director shall determine the amount of compensation paid by the employer or insurance carrier which is to be reimbursed under this subsection, and the director shall certify to the commissioner of insurance the amount so determined. Upon receipt of such certification, the commissioner of insurance shall cause payment to be made to the employer or the employer's insurance carrier in accordance therewith."

It should be noted that K.S.A. 44-556(d) was amended by the 1982 Legislature effective after the date of certification herein. However, these amendments relate wholly to form rather than substance. Accordingly, this opinion will refer only to the statute as amended.

The issue in both appeals is as previously noted, identical. Each claimant is in a factually similar situation as far as the issue is concerned. The stipulated facts from the Johnston appeal are summarized as follows:

On February 1, 1982 the Workers' Compensation Director found claimant had a 50% permanent partial disability to the body as a whole and fixed compensation at $77.88 per week for 400.71 weeks. Respondent and the insurance carrier appealed this award to the district court. The court found claimant had only a 30% permanent partial disability to the body as a whole. Accordingly, the award was reduced to $46.72 per week for 400.71 weeks of which $15,381.62 would be due and owing in the future.

For the ten-week period prior to the Director's decision and for the period said award was on appeal to the district court, respondent and its insurance carrier, pursuant to K.S.A. 1982 Supp. 44-556, paid a total of 20.71 weeks of compensation at the 50% disability rate of $77.88. Deducting the 30% disability rate of $46.72 therefrom results in a $31.16 per week overpayment for 20.71 weeks for a total of $645.32.

Respondent and its insurance carrier then made request to the Director, pursuant to K.S.A. 1982 Supp. 44-556(d) to certify said $645.32 overpayment to the Commissioner of Insurance for reimbursement by the Kansas Workers' Compensation Fund. The Director issued said order of certification, and the Fund appealed therefrom to the district court. The order of certification was affirmed by the district court and the Fund appeals from said judgment.

Obviously, resolution of the issue herein involves statutory construction and the general applicable rules need to be stated.

The first rule of statutory construction is to ascertain, if possible, the intent of the legislature. *Nordstrom v. City of Topeka,* 228 Kan. 336, 340, 613 P.2d 1371 (1980), *Brinkmeyer v. City of Wichita,* 223 Kan. 393, Syl. ¶ 2, 573 P.2d 1044 (1978). Consistent with the first rule, it is fundamental the purpose and intent of the legislature governs when that intent can be ascertained from the statute. *Kansas State Board of Healing Arts v. Dickerson,* 229 Kan. 627, 630, 629 P.2d 187 (1981). Finally, where a statute is plain and unambiguous, Kansas courts must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be. *Johnson v. McArthur,* 226 Kan. 128, 596 P.2d 148 (1979); *Brinkmeyer v. City of Wichita,* 223 Kan. at 397. All parties to this action agree K.S.A. 1982 Supp. 44-556($d$) is unambiguous.

The crux of the issue is the import of the following emphasized portion of K.S.A. 1982 Supp. 44-556($d$):

"[T]he employer and the employer's insurance carrier . . . shall be reimbursed from the workers' compensation fund . . . for all amounts of compensation so paid *which are in excess of the amount of compensation that the worker is entitled to as determined by the final decision on appeal.*" (Emphasis supplied.)

The Fund contends that the emphasized language limits reimbursement from the Fund to those situations where the total amount of overpayments exceeds the total amount of compensation remaining to be paid. Future payments to claimant Johnston totalled $15,381.62, while the overpayments totalled only $645.32. The Fund then concludes that the statute does not impose liability on the Fund for the reimbursements herein and that the remedy of the employer and its insurance carrier is to make themselves whole by withholding funds from future payments to claimant.

The fallacy of this argument is pointed out by the claimant. There is no procedure or authorization which permits deducting the overpayment from future payments due the claimant. If all payments were withheld by the insurance carrier until it had reimbursed itself for its overpayment to claimant Johnston, the injured worker would go 12 consecutive weeks without any workers' compensation being received. Claimant Donna Pruyn's award of $77.28 a week was reduced by the district court to $12.88 per week for 387.13 weeks with the total overpayment

being $1,159.20. Therefore, 81 weeks would have to elapse before Ms. Pruyn could receive another check if this method of reimbursement were utilized. Did the Legislature intend to leave it to the employer and insurance carrier to decide whether to repay themselves immediately, at the end of the payment period, or by deduction of a percentage each week? Such an intent would be highly unlikely and out of keeping with the philosophy of workers' compensation.

The Fund has not shown us any instance in the history of the Kansas Workmen's Compensation Act, K.S.A. 44-501 *et seq.,* where the Legislature has required an injured worker to repay an employer or its insurance carrier when an award has been reduced on judicial appeal. In fact, our case law has indicated the opposite legislative intent. See *Casebeer v. Alliance Mutual Casualty Co.,* 203 Kan. 425, 454 P.2d 511 (1969); and *Tompkins v. Rinner Construction Co.,* 196 Kan. 244, 409 P.2d 1001 (1966).

The Fund cites *Streff v. Goodyear Tire & Rubber Co.,* 211 Kan. 898, 508 P.2d 495 (1973), in support of its argument that the insurance carrier can set off the overpayments against future payments due claimant. This reliance is misplaced. *Streff* involved a $1,100 lump-sum payment by the insurance carrier in a nonstatutorily authorized attempt at settlement of the claim. The settlement did not occur and the claim went through to hearing and award. On appeal before this court, the question was raised as to whether credit should be allowed for this irregular voluntary predecision payment. The court held:

"To disallow the respondent and its insurance carrier a credit for the subject payment would work an obvious inequity. It must be conceded the Kansas Workmen's Compensation Laws are to be liberally construed so as to allow payment of compensation whenever reasonably possible. This is not to say, however, that an injured workman should be allowed to receive what would amount to double payment in a situation such as here.

". . . The allowance of a credit or set-off for the $1,100 payment would in no way affect the claimant's statutory rights. To disallow the credit would be contrary to the principles of equity." 211 Kan. at 903-04.

The *Streff* "situation such as here" is obviously wholly dissimilar to the situation before us involving overpayments pursuant to awards which were later judicially reduced. Additionally, *Streff* was decided prior to the enactment of 44-556(*d*) and was decided on general equity principles.

Much of the Fund's brief herein is devoted to the policy

argument that the claimant should not receive a windfall to which he or she is not entitled except when he or she would have to dig into his or her own pocket to repay the overpayment. The policy argument loses considerable impact when applied to the facts before us—that is, it would be an unfair burden if Ms. Pruyn had to pay the $1,159.20 overpayment from her pocket, but only right and fair if she has 81 consecutive weeks of compensation totally withheld to repay the insurance carrier. In any event, as pointed out by the claimant, the policy argument would be better addressed to the Legislature as its implementation would entail substantial statutory modification.

We conclude that where a workers' compensation award is reduced or totally disallowed by a district or appellate court, K.S.A. 1982 Supp. 44-556(d) provides the sole means by which the employer and its insurance carrier may be reimbursed for any excess payment of compensation. Said statute provides that such reimbursement shall be from the Workers' Compensation Fund upon certification of the amount by the Director of Workers' Compensation and is not limited in application to reimbursement of overpayment which exceeds the balance due claimant on the award as modified.

This result is consistent with the comments of the five Kansas law journal authors who discussed the effect of 44-556(d) shortly after its enactment—including an article written by Bryce B. Moore, Workers' Compensation Director. Moore, *Workmen's Compensation—An Introduction to Changes in the Kansas Statute*, 24 Kan. L. Rev. 603, 608 (1976); Herrington, *Workmen's Compensation—Major Changes in Employments Covered, Benefits, Defenses, Offsets, and Other Changes*, 24 Kan. L. Rev. 611, 616 (1976); Ross, *Workmen's Compensation—The Preliminary Hearing, The Workmen's Compensation Fund, and Civil Penalties for Failure to Pay Compensation When Due*, 24 Kan. L. Rev. 623, 625 (1976); Wright & Rankin, *Potential Federalization of State Workmen's Compensation Laws—The Kansas Response*, 15 Washburn L.J. 244, 258, n. 73 (1976).

We further conclude, on the rationale hereinbefore expressed, that the trial court did not err in affirming, in both cases herein, the Workers' Compensation Director's orders of certification to the Commissioner of Insurance for payment from the Workers' Compensation Fund.

The judgment in each of the consolidated cases is affirmed.